**UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION**

| | |
|---|---|
| DEBORA L. CUNNINGHAM, | Case No. 1:13-cv-561 |
| Plaintiff, | Barrett, J. |
| | Bowman, M.J. |
| v. | |
| CAROLYN W. COLVIN, COMMISSIONER OF SOCIAL SECURITY, | |
| Defendant. | |

**REPORT AND RECOMMENDATION**

Plaintiff Debora Cunningham filed this Social Security appeal in order to challenge the Defendant's findings that she is not disabled. *See* 42 U.S.C. §405(g). Proceeding through counsel, Plaintiff presents six claims of error, all of which the Defendant disputes. For the reasons explained below, I conclude that the ALJ's finding of non-disability should be AFFIRMED, because it is supported by substantial evidence in the administrative record.

**I. Summary of Administrative Record**

On October 14, 2009, Plaintiff filed an application for Disability Insurance Benefits (DIB) alleging a disability onset date of January 17, 2008, due to physical and mental impairments. (Tr. 138-39, 165, 179). Plaintiff's date last insured is March 31, 2008. After Plaintiff's claims were denied initially and upon reconsideration, she requested a hearing *de novo* before an Administrative Law Judge. ("ALJ"). On January 31, 2012, ALJ Gregory G. Kenyon held an evidentiary hearing at which Plaintiff appeared with counsel. The ALJ heard testimony from Plaintiff, and an impartial vocational expert. (Tr. 28-68). On March 28, 2012, ALJ Kenyon denied Plaintiff's

1

application in a written decision. (Tr. 11-21). Plaintiff now seeks judicial review of the denial of her application for benefits.

Plaintiff was 52 years old on the date last insured. (Tr. 19). She is a high school graduate and has past relevant work as a repair tech at General Electric. (Tr. 62, 157-58, 168, 180-81, 191). Plaintiff alleges disability based upon social anxiety disorder, chronic fibromyalgia, high blood pressure, sleep apnea, asthmatic bronchitis, restless leg syndrome, and left shoulder/neck arthritis. Plaintiff further contends she suffers from panic attacks, problems with depression, and a fear of being around people. In October 2009, Plaintiff had a stroke and was hospitalized for three days.

Based upon the record and testimony presented at the hearing, the ALJ found that Plaintiff had the following severe impairments: "cervical degenerative disc disease; degenerative joint disease of the left shoulder; residuals of a remote prior left ankle fracture; obstructive sleep apnea; a history of mild coronary artery disease (prior to date last insured); restless leg syndrome; fibromyalgia; depression; and anxiety." (Tr. 13). The ALJ concluded that none of Plaintiff's impairments alone or in combination met or medically equaled a listed impairment in 20 C.F.R. Part 404, Subp. P, Appendix 1. The ALJ determined that Plaintiff retains the following residual functional capacity ("RFC") to perform light work with the following limitations:

> She is limited to (1) occasional crouching, crawling, kneeling, stooping, balancing, and climbing of ramps and stairs; (2) no climbing of ladders, ropes, and scaffolds; (3) no work around hazards such as unprotected heights or dangerous machinery; (4) no driving of automotive equipment; (5) occasional overhead reaching with the upper extremities; (6) limited to performing unskilled simple, repetitive tasks; (7) limited to occasional contact with coworkers, supervisors, and the public; (8) no jobs involving rapid production pace work or strict production quotas; and (9) limited to performing jobs in a relatively static work environment in which there is

2

>very little, if any, change in the job duties or work setting from one day to the next.

(Tr. 14). Based upon the record as a whole including testimony from the vocational expert, and given Plaintiff's age, education, work experience, and RFC, the ALJ concluded that, while the Plaintiff is unable to perform her past relevant work, she can nonetheless perform jobs that exist in significant numbers in the national economy, including such jobs as silverware wrapper, garment inspector, and merchandise marker. (Tr. 63-64). Accordingly, the ALJ determined that Plaintiff is not under disability, as defined in the Social Security Regulations, and is not entitled to DIB. *Id.*

The Appeals Council denied Plaintiff's request for review. Therefore, the ALJ's decision stands as the Defendant's final determination. On appeal to this Court, Plaintiff argues that the ALJ erred by: 1) failing to consider all of the relevant evidence; 2) failing to adequately explain his findings; 3) improperly evaluating Plaintiff's fibromyalgia; 4) failing to adequately explain his reasons for the weight he assigned to the state agency opinions; 5) failing to obtain testimony of a medical expert; and 6) failing to include limitations related to absenteeism in his hypothetical questions to the vocational expert. Upon close analysis, I conclude that Plaintiff's assignments of error are not well-taken.

**II. Analysis**

**A. Judicial Standard of Review**

To be eligible for SSI or DIB a claimant must be under a "disability" within the definition of the Social Security Act. *See* 42 U.S.C. §§423(a), (d), 1382c(a). The definition of the term "disability" is essentially the same for both DIB and SSI. *See Bowen v. City of New York*, 476 U.S. 467, 469-70 (1986). Narrowed to its statutory meaning, a "disability" includes only physical or mental impairments that are both

"medically determinable" and severe enough to prevent the applicant from (1) performing his or her past job and (2) engaging in "substantial gainful activity" that is available in the regional or national economies. *See Bowen*, 476 U.S. at 469-70 (1986).

When a court is asked to review the Commissioner's denial of benefits, the court's first inquiry is to determine whether the ALJ's non-disability finding is supported by substantial evidence. 42 U.S.C. § 405(g). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (additional citation and internal quotation omitted). In conducting this review, the court should consider the record as a whole. *Hephner v. Mathews*, 574 F.2d 359, 362 (6th Cir. 1978). If substantial evidence supports the ALJ's denial of benefits, then that finding must be affirmed, even if substantial evidence also exists in the record to support a finding of disability. *Felisky v. Bowen*, 35 F.3d 1027, 1035 (6th Cir. 1994). As the Sixth Circuit has explained:

> The Secretary's findings are not subject to reversal merely because substantial evidence exists in the record to support a different conclusion . . . . The substantial evidence standard presupposes that there is a 'zone of choice' within which the Secretary may proceed without interference from the courts. If the Secretary's decision is supported by substantial evidence, a reviewing court must affirm.

*Id.* (citations omitted).

In considering an application for disability benefits, the Social Security Agency is guided by the following sequential benefits analysis: at Step 1, the Commissioner asks if the claimant is still performing substantial gainful activity; at Step 2, the Commissioner determines if one or more of the claimant's impairments are "severe;" at Step 3, the Commissioner analyzes whether the claimant's impairments, singly or in combination, meet or equal a Listing in the Listing of Impairments; at Step 4, the Commissioner

4

determines whether or not the claimant can still perform his or her past relevant work; and finally, at Step 5, if it is established that claimant can no longer perform his or her past relevant work, the burden of proof shifts to the agency to determine whether a significant number of other jobs which the claimant can perform exist in the national economy. *See Combs v. Commissioner of Soc. Sec.*, 459 F.3d 640, 643 (6th Cir. 2006); 20 C.F.R. §§404.1520, 416.920.

A plaintiff bears the ultimate burden to prove by sufficient evidence that he or she is entitled to disability benefits. 20 C.F.R. § 404.1512(a). Thus, a plaintiff seeking benefits must present sufficient evidence to show that, during the relevant time period, he or she suffered an impairment, or combination of impairments, expected to last at least twelve months, that left him or her unable to perform any job in the national economy. 42 U.S.C. § 423(d)(1)(A).

**B. Specific Errors**

*1. Consideration of All Relevant Evidence*

Plaintiff's first assignment of error asserts that the ALJ failed to "consider all relevant evidence" as requires by SSR 96-8p. Namely, Plaintiff contends the ALJ erroneously determined that "there was very little evidence of record which predates the Claimant's date last insured." (Tr. 17). The Commissioner, however, contends that there was very little evidence from January 17, 2008 (when she alleged that she became disabled), to her March 31, 2008 date last insured, that her severe impairments had advanced to a disabling degree of severity. The undersigned agrees.

5

Plaintiff argues that the ALJ performed a perfunctory review of Plaintiff's symptoms and that the decision contains no analysis of fibromyalgia and its associated impairments. Plaintiff further contends that the record contains extensive relevant evidence that predates the March 2008 date last insured. To illustrate this, Plaintiff has created a chart providing a chronology of the medical evidence in the record from 2002 through the date last insured. (Doc. 13, Ex A). Plaintiff contends that the ALJ's decisions should be reversed because there is no indication that he considered such evidence. Plaintiff's contention is unavailing.

Here, the ALJ's decision indicates that he properly considered all relevant record evidence, including the many records outlined in Plaintiff's chronology. Namely, the ALJ noted that Plaintiff injured her left ankle in 1997 and has ongoing difficulty with aching pain. (Tr. 16).

The ALJ further noted that Plaintiff has been suffering from depression and anxiety since 2002, resulting in crying spells. The ALJ pointed to the treatment records from 2007 from psychiatrist Hima Kode, M.D. showing a history of anxiety and depression. Dr. Kode found that plaintiff had mild symptoms and assigned her a Global Assessment of Functioning (GAF) score of 60 in May 2007. The ALJ also noted that Plaintiff was seen by Dr. Eggerman between September 2010 and June 2011. Dr. Eggerman also noted GAF score in the 60's and described moderate level symptoms. (Tr. 19).

The ALJ also considered the record evidence related to degenerative joint disease of Plaintiff's left shoulder. (Tr. 15, 18). He noted Plaintiff's 2003 surgery to remove bone spurs. He also noted that Plaintiff received cortisone injections in her

should between 2003 and 2009. The ALJ also cited to the findings from an MRI taken of Plaintiff's shoulder in December 2007, which revealed some post-surgical changes as well as ligament tearing. (Tr. 18, 278).

The ALJ's decision outlined Plaintiff's history of cervical disc disease, beginning with complaints of neck pain in 2000. The ALJ noted that Plaintiff had been diagnosed with a cervical strain between 2007 and January 2008. An MRI of Plaintiff's cervical spine was taken on January 17, 2008, which indicated moderate level degenerative changes at C5-C6 and C6-C7 with some cord effacement. (Tr. 18). The ALJ noted that Plaintiff was treated with cervical epidural injections in April 2008, as well as chiropractic care. The ALJ further cited to an EMG taken in April 2008, which showed no neurological involvement in the upper extremities. (Tr. 18).

The ALJ also noted the record evidence related to Plaintiff's complaints of chest pain as early as February 2008. (Tr. 18). Plaintiff underwent a cardiac catheterization in June 2010 and had a myocardial infarction in June 2010, showing mild level non-obstructive disease. The ALJ noted that Plaintiff's ejection fracture readings remained within normal limits. (Tr. 19).

The ALJ also addressed the evidence relating to Plaintiff's sleep apnea, and her use of the CPAP machine (although she testified that she had not used one in over a year). (Tr. 15). The ALJ further noted Plaintiff's complaints of restless leg syndrome and resulting pain and sleep disturbances. He noted that Plaintiff indicated that medication therapy has been beneficiate and her dosage was recently increased.

Finally, contrary to Plaintiff's assertion, the ALJ cited to Plaintiff's complaints of pain related to fibromyalgia. (Tr. 16). The ALJ noted that Plaintiff was diagnosed with fibromyagia in 2008 and complained of resulting pain in her shoulder, hip, and feet. (Tr. 16).

The Sixth Circuit repeatedly has held that an ALJ is not required to explicitly discuss "every single piece of evidence submitted by a party." *Kornecky v. Com'r of Soc. Sec.,* 167 Fed. Appx. 496, 508 (6th Cir.206) (quoting *Loral Defense Systems– Akron v. N.L.R.B .,* 200 F.3d 326, 453 (6th Cir.1999)) (citations and internal quotation marks omitted). Here, even if the ALJ did not specifically distinguish each and every snippet of evidence that might support a greater limitation, the ALJ provided sufficient discussion for this Court to review, understand, and affirm his decision as supported by substantial evidence. Thus, Plaintiff demonstrates no reversible error in this regard.

2. *ALJ's Articulation of his Findings*

"As a rule, the ALJ must build an accurate and logical bridge between the evidence and his conclusion. Thus, 'an ALJ's decision must articulate with specificity reasons for the findings and conclusions that he or she makes.'" *Smith v. Colvin,* 2013 U.S. Dist. LEXIS 106506 *22-23 (S.D. Ohio 2013) (citations omitted). Plaintiff argues next that the ALJ's decision does not include any explanation of how he considered and resolved material inconsistencies or ambiguities in the evidence or how he reached is ultimate conclusions, thereby requiring remand. Plaintiff provides no additional argument in support of this argument. The Court has no obligation to search the record to develop and support the arguments of the parties. *See Hollon ex rel. Hollon v. Comm'r of Soc. Sec.,* 447 F.3d 477, 491 (6th Cir. 2006). Rather, the Court's review is

limited to the specific issues the parties raise. *Id.* Plaintiff's conclusory allegations fail to identify or sufficiently explain whether the record contains evidence that is inconsistent with the ALJ's findings.

In any event, as outlined above, the ALJ's decision indicates that he properly evaluated the medical evidence, limited opinion evidence, as well as Plaintiff's testimony and properly articulated his rationale at every step in the sequential process as required by Agency regulation. As noted by the Commissioner, it was not necessary, however, for him to "analyze the relevance of each piece of evidence individually. Instead, the regulations state that the decision must contain only 'the findings of facts and the reasons for the decision.'" *Bailey v. Comm'r of Soc. Sec.*, 413 F. App'x 853, 855 (6th Cir. 2011) (quoting 20 C.F.R. § 404.953); *Norris v. Comm'r of Soc. Sec.*, 461 F. App'x 433, 441 (6th Cir. 2012) (Given the ALJ's discussion of the facts, the physician opinions, and credibility, "the ALJ's RFC determination was premised on more than mere boilerplate assertions and demonstrated meaningful engagement with the facts presented in the record."). Thus, Plaintiff's second assignment of error should be overruled.

### *3. Evaluation of Fibromyalgia*

Plaintiff's third assignment of error alleges that the ALJ's RFC-based hypothetical question to the vocational expert at the hearing failed to include any of the many limitations arising from Claimant's fibromyalgia. Specifically, without a discussion of the reported symptom-related functional limitations and restrictions arising from claimant's fibromyalgia, Plaintiff contends that the ALJ's RFC is not supported by substantial evidence. Plaintiff's contention is not well-taken.

Here, Plaintiff asserts that fibromyalgia comes with many symptoms, most of which claimant experienced, such as fatigue, sleep problems, pain, depression, and anxiety. SSR 12-2p. Plaintiff further contends that "[d]espite his finding that fibromyalgia was a severe impairment at the time of the date last insured, ALJ Kenyon may have overlooked it in his RFC discussion because Dr. Greenblatt did not formally diagnosis the condition until three and a half months after the date last insured." (Doc. 16) Plaintiff notes her complaints of neck and should pain and treatment for her pain with steroid injections and oral steroids.

It is well established that a mere diagnosis or catalogue of symptoms does not indicate functional limitations caused by the impairment. *See Young v. Sec'y of Health & Human Servs.,* 925 F.2d 146,151 (6th Cir.1990) (diagnosis of impairment does not indicate severity of impairment). Additionally, the Sixth Circuit has determined that "a diagnosis of fibromyalgia does not automatically entitle" a claimant "to disability benefits." *Vance v. Comm'r of Soc. Sec.,* 260 F. App'x 801, 805–06 (6th Cir.2008).

Here, as noted by the Commissioner, Plaintiff fails to identify any fibromyalgia-related limitations ALJ Kenyon erroneously excluded in either his RFC finding or the RFC-based hypothetical he posed to the vocational expert. More importantly, the ALJ's RFC and hypothetical questions considered Plaintiff's functional limitations associated with her back, neck and shoulder pain, as well as her anxiety. As noted above, additional restrictions for only occasional crouching, crawling, kneeling, stooping, balancing, and climbing of ramps and stairs; no climbing of ladders, ropes, and scaffolds; no work around hazards; no driving of automotive equipment; only occasional overhead reaching; and no rapid pace or strict production quota jobs. (Tr. 14).

10

Accordingly, the ALJ did not error in evaluating Plaintiff's fibromyalgia and/or the resulting limitations therefrom.

*4. Weight to State Agency Physicians*

Plaintiff's fourth assignment of error contends that the ALJ failed to adequately articulate his rationale for his reliance upon the opinions of the non-examining sources. In relying on the medical opinions of nonexamining sources herein, the ALJ concluded, without elaboration, that such findings were entitled to "great weight." (Tr. 19). Plaintiff asserts that the ALJ's failure to provide any reasons for this finding requires remand. *See Blakely v. Commissioner of Social Security*, 581 F.3d 399, 408-409 (6th Cir. 2009).

The Commissioner admits that the ALJ did not give a lengthy explanation for the weight he gave to the state agency opinions, which were the only opinions in the record. Nonetheless, the Commissioner asserts further analysis of such opinions is not required by Agency regulations. Notably, while "opinions offered by nonexamining physicians 'are weighed under the same factors as treating physicians including supportability, consistency, and specialization," the "procedural 'good reasons' requirement that applies to rejecting a treating physician's opinion does not apply to non-treating physicians." *Boekel v. Astrue,* No. 11-290 (S.D. Ohio Mar. 7, 2012) (Black, J.) (quoting *Smith v. Comm'r of Soc. Sec.*, 482 F3d. 873 (6th Cir. 2007)); *Deaton v. Astrue*, 2011 WL 4064028 (S.D. Ohio Sept. 13, 2011) (Spiegel, J.) (rejecting claimant's argument "that the ALJ here did not spell out the examining relationship and treating relationships of [reviewing physicians], when, by definition such sources do not have an ongoing treatment relationship, or any relationship at all, with the claimant").

Accordingly, the undersigned finds that the ALJ's decision is substantially supported in this regard.

### 5. *Medical Expert Testimony*

Plaintiff's fifth assignment of error asserts that the ALJ erred in failing to obtain the testimony of a medical expert to address the severity and resulting limitations of Plaintiff's impairments. Plaintiff's assertion is not well-taken.

The primary function of a medical expert is to explain, in terms that the ALJ, who is not a medical professional, may understand, the medical terms and findings contained in medical reports in complex cases. *See Richardson v. Perales,* 402 U.S. 389, 408, 91 S.Ct. 1420, 28 L.Ed.2d 842 (1971). The Regulations provide that an ALJ may "ask for and consider opinions from medical experts on the nature and severity of [the claimant's] impairment(s) and on whether [the] impairment(s) equals the requirements of any impairment listed in appendix 1 to this subpart."  20 C.F.R. §§ 404.1527(f)(2)(iii) and 416.927(f)(2) (iii).  An ALJ's decision whether a medical expert is necessary, however, is inherently discretionary.  There is no mandate requiring an ALJ to solicit such evidence. *See Simpson v. Comm'r of Soc. Sec.,* 344 F. App'x 181, 189 (6th Cir.2009) ( "20 C.F.R. §§ 404.1527(f)(2) (iii) and 416.927(f)(2)(iii) provide discretion rather than a mandate to the ALJ to decide whether to solicit medical expert testimony ..."). Ultimately, the ALJ is charged with the duty of evaluating the medical evidence in the record and determining the claimant's RFC. See 20 C.F.R. § 404.154(c).

There is no showing in this case that the use of a medical consultant was necessary.  The medical record in this matter is complete, straight forward, and no treating physician opined that Plaintiff's impairments prevent her from engaging in work-

related activity. To the contrary, the state agency physicians both found that Plaintiff's impairments did not prevent her from engaging in gainful employment.

Plaintiff however, argues that those opinions were rendered early in the case when the medical evidence was relatively undeveloped. Under such circumstances, Plaintiff argues that an ALJ is under the obligation to seek expert medical opinions. *See Tibbetts v. Commissioner*, 2013 U.S. Dist. LEXIS 161129 *19 (S.D. Ohio Nov. 12, 2013)(a case involving fibromyalgia). Plaintiff's argument is unavailing.

As noted by the Commissioner, Plaintiff fails to identify what precisely ALJ Kenyon misunderstood about her conditions, and how any apparent misunderstandings ultimately affected his decision. *Chapman v. Astrue*, 2011 WL 1897434 (S.D. Ohio Mar. 10, 2011) (Bowman, MJ) ("it is the claimant's burden to place a 'complete and detailed' record before the ALJ, it is not the responsibility of the administrative law judge") (quoting *Landsaw v. Sec'y of Health & Human Servs.*, 803 F.2d 211, 214 (6th Cir. 1986). Furthermore, Plaintiff's reliance *Tibbetts* is misplaced. While *Tibbetts* did involve fibromyalgia, the record contained a number of medical opinions and substantially more significant more evidence relating to the Plaintiff's symptoms of fibromyalgia than the instant action. More importantly, while the undersigned recommended remand in *Tibbetts*, I did not find that the ALJ had an obligation to obtain a medical expert on remand. Instead, the Report and Recommendation stated:

> On remand for further development of the record, the ALJ **may** refer Plaintiff for a consultative psychological examination, and/or solicit other additional medical evidence if necessary, such as the testimony of a medical expert.

*Tibbetts v. Comm'r of Soc. Sec.*, 1:12-CV-894, 2013 WL 5980457 (S.D. Ohio Nov. 12, 2013) (emphasis added).

13

Accordingly, on this record, it was within the ALJ's discretion, to call or not to call a medical expert. Thus, the ALJ's reasonable exercise of that discretion should not be overturned. For these reasons, the undersigned finds no merit in this assignment of error.

6. *Consideration of Absenteeism*

For her final assignment of error, Plaintiff contends that the ALJ erred in not including any limitations for absenteeism in his hypotheticals to the vocational expert. According to Plaintiff, during the two years prior to the date last insured, claimant attended at least 51 appointments with health care providers for treatment of her severe impairments. (Tr. 263-265, 268, 278-79, 283, 311-18, 316, 382-83, 385, 387-91, 393, 396-99, 401, 403-05, 408, 447, 519-24, 528-531, 609-610, 850, 929-932). Given the level of absenteeism that Plaintiff's treatments and impairments would cause her, and given the vocational testimony at the hearing, Plaintiff contends that there are no full-time jobs that claimant could perform that existed in substantial numbers in the economy on or before her date last insured. *Hayes v. Commissioner*, 2010 U.S. Dist. LEXIS 16298 *34-35 (N.D. Ohio).

Though a treating physician's opinion regarding a plaintiff's expected rate of absenteeism may be entitled to deference, there was no such opinion from a treating physician in this case. *See Sharp v. Barnhart,* 152 Fed. Appx. 503, 510 (6th Cir. Oct.26, 2005) (unpublished) (quoting *Abendroth v. Barnhart,* 26 Fed. Appx. 580 (7th Cir. Jan.31, 2002) (such an opinion goes to the "nature and severity of a medical condition [that] is entitled to controlling weight if well-supported by medical findings and not inconsistent with other substantial evidence"). Here, in response to the question "how much

14

absenteeism do employers tolerate for sedentary jobs, typically?" the VE simply responded "One day a month." (Tr. 67).The ALJ is not required to specifically address such an opinion, since it is not the opinion of a treating physician, and was merely a generalized answer given in the context of a hypothetical question posed at the hearing. The ALJ did not err in failing to assess this issue under these circumstances.

More importantly, the Sixth Circuit has repeatedly made clear that a hypothetical question need only reference plaintiff's credible limitations; unsubstantiated complaints are not to be included in the question. *See McKenzie v. Commissioner of Soc. Sec.,* No. 99–3400, 2000 WL 687680, at * 4 (6th Cir. May 19, 2000). Here, the ALJ selected hypothetical questions which accurately described Plaintiff's limitations and the extent of her ability to perform work as supported by the evidence. In this case, the ALJ properly determined that Plaintiff's subjective complaints relating the functional limitations associated with her impairments were not fully credible. As noted by the Commissioner, Plaintiff's does not challenge the ALJ's credibility finding. As such, the ALJ's decision is substantially supported in this regard.

### III. Conclusion and Recommendation

For the reasons explained herein, **IT IS RECOMMENDED THAT** Defendant's decision be found to be **SUPPORTED BY SUBSTANTIAL EVIDENCE**, and **AFFIRMED**, and that this case be **CLOSED.**

      *s/Stephanie K. Bowman*
Stephanie K. Bowman
United States Magistrate Judge

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

DEBORA L. CUNNINGHAM,            Case No. 1:13-cv-561

    Plaintiff,                              Barrett, J.
                                           Bowman, M.J.
   v.

CAROLYN W. COLVIN,
COMMISSIONER OF SOCIAL SECURITY,

    Defendant.

**NOTICE**

Pursuant to Fed. R. Civ. P. 72(b), any party may serve and file specific, written objections to this Report & Recommendation ("R&R") within **FOURTEEN (14) DAYS** of the filing date of this R&R.  That period may be extended further by the Court on timely motion by either side for an extension of time.  All objections shall specify the portion(s) of the R&R objected to, and shall be accompanied by a memorandum of law in support of the objections.  A party shall respond to an opponent's objections within **FOURTEEN (14) DAYS** after being served with a copy of those objections.  Failure to make objections in accordance with this procedure may forfeit rights on appeal.  *See Thomas v. Arn,* 474 U.S. 140 (1985); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981).